**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RICHARD ALAN KING,

*Plaintiff,*

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant.*

Civil Action No. 15-1445 (RDM)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard Alan King, proceeding *pro se*, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the U.S. Department of Justice, seeking disclosure of records from four Department of Justice components—the Drug Enforcement Agency ("DEA"); the Federal Bureau of Investigation ("FBI"); the Executive Office for United States Attorneys ("EOUSA"); and the Office of the Solicitor General ("OSG"). Dkt. 1 at 2. The Department released some records, withheld others, and moved to dismiss and/or for summary judgment in March 2016. Dkt. 26. The Court advised King of the need to respond to the Department's motion, Dkt. 27, and granted King multiple extensions of time, eventually providing King with over 300 days to respond to the Department's motion. King, however, has failed to respond, and his (extended) time to do so expired over two months ago. In light of the D.C. Circuit's decision in *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016), the Court may, accordingly, treat the Department's factual proffers as conceded, but it must address the Department's legal arguments on their merits. Fed. R. Civ. P. 56(e)(2). Having carefully considered those legal arguments, the Court will grant in part and deny in part the Department's motion.

## I. BACKGROUND

King brought this FOIA action in September 2015, Dkt. 1, and on March 3, 2016, the Department of Justice moved to dismiss and/or for summary judgment, Dkt. 26. The next day, the Court entered an order advising King of the need to respond to the Department's motion and explaining, among other things, that the Court would "accept as true any factual assertions supported by" declarations or other evidence offered by the Department that King did not affirmatively controvert. Dkt. 27 at 2. In that same order, moreover, the Court *sua sponte* extended King's time to respond to the Department's motion until April 15, 2016. *Id.* at 3. Since that time, the Court has granted King four additional extensions of time, giving him a total of 326 days—from March 3, 2016, until January 23, 2017—to respond to the Department's motion. *See generally* Dkt. 46. Finally, on January 24, 2017, King filed his fifth motion for an extension, this time seeking to "toll" the time to respond "until further notice." Dkt. 41. In support of that request, King explained that the facility in which he is incarcerated is frequently and without warning placed on lockdown for indefinite periods of time, thus preventing him and other inmates form making use of the prison library. *Id.* at 2, 3.

In light of King's repeated requests for additional time and his request to "toll" the time for his response indefinitely, the Court ordered the Department to indicate how many days King had been on lockdown in the prior year. *See* Minute Order, Jan. 26, 2017. The Department responded with a declaration revealing that King had over 280 days when he was not on lockdown between the time the Department filed its motion on March 3, 2016, and the end of King's last extension on January 23, 2017. *See* Dkt. 42-1 at 1–2. As the Court explained, "[e]ven accepting that the [Department's] tally did not include occasional lockdowns 'for short periods of time, typically an hour up to a few hours,' . . . King [has] had more than ample time to

respond," and the Court, accordingly, denied King's request to "toll" his time to respond. Dkt. 46 at 3–4. In the same order, the Court also advised King that it intended "promptly to resolve" the Department's pending motion and that, when it did so, it would rely on "whatever papers are then before the Court." *Id.* at 4. An additional three weeks have now passed, and King still has not responded to the Department's motion.

The Court, accordingly, is now prepared to decide the Department's long-pending motion.

## II. ANALYSIS

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g.*, *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 268 (D.D.C. 2016). To prevail on a summary judgment motion, the moving party must "show that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In a FOIA action, the agency may meet its burden by submitting "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks and citation omitted), and an index of the information withheld, *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973). An agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIAss] inspection requirements.'" *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

As the Court of Appeals explained in *Winston & Strawn*, 843 F.3d at 505, however, "a motion for summary judgment cannot be 'conceded' for want of an opposition." Rather, the

burden remains on "the movant to demonstrate why summary judgment is warranted," and the district court "must . . . determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Id.* (citation omitted). If the nonmovant "fails to properly address [the other] party's assertion of fact as required by" Federal Rule of Civil Procedure 56(c), the district court may provide that party with "an opportunity to properly support or address th[at] fact," Fed. R. Civ. P. 56(e), and, indeed, providing such an opportunity is the "preferred first step." *Winston & Strawn*, 843 F.3d at 507 (citation omitted). But, if the nonmovant fails to respond to a movant's factual submission—and fails to take advantage of opportunities to rectify that failure—the district court may "consider the fact undisputed for purposes of the motion." *Id.*; *see also* Fed. R. Civ. P. 56(e).

Here, the Court advised King of the perils of not responding to the Department's motion and has afforded him every reasonable opportunity to file a response. In August 2016, moreover, the Court cautioned King that "[n]o further extensions of time [would] be granted absent a showing of extraordinary circumstances," Minute Order, Aug. 24, 2016, and, when the Court granted yet another extension on November 9, 2016, it warned, more categorically, that "[n]o further extensions will be granted," Minute Order, Nov. 9, 2016. And, now, another two months have passed since January 23, 2017, when King's final extension expired. *See id.* Notwithstanding this more than ample time to respond, King failed to do so, and the Court cannot discern any basis to believe that further extensions of time are likely to cure this omission. The Court will, accordingly, accept the Department's factual assertions to the extent they are supported by declarations or other competent evidence. It must still, however, address the sufficiency of the Department's legal arguments. The Court will address those arguments as they apply to each of the four Department of Justice components from which King seeks records.

**A. OSG and FBI**

King's claims with respect to the OSG and the FBI are easily resolved.

The OSG Executive Officer has submitted a declaration explaining that the "OSG maintains all case documents/files physically within the office and uses the OSG Automated Docket System to identify which case documents/files may have responsive records." Dkt. 26-6 at 3 (Yancey Decl. ¶ 9). Apparently, the OSG's involvement in King's case was limited. King filed a petition for a writ of certiorari, *id.* at 2 (Yancey Decl. ¶ 6), and the Solicitor General filed a notice waiving his right to respond to the petition, *id.* at 3 (Yancey Decl. ¶ 8). According to the OSG Executive Officer, a "search of the OSG Automated Docket System and Supreme Court case file . . . confirmed that OSG has no documents beyond the certiorari petition and waiver notice on file." *Id.* (Yancey Decl. ¶ 10). Because the OSG has conducted a reasonable search, and because neither King's certiorari petition nor the Solicitor General's notice waiving his right to respond are responsive to King's FOIA request, the Court concludes that the OSG has satisfied its FOIA obligations. The Court will, accordingly, grant the Department's motion for summary judgment as to the OSG.

King's claim with respect to the FBI fails as well, but for different reasons. As the D.C. Circuit has explained, the FOIA administrative scheme "requires each [FOIA] requester to exhaust administrative remedies," including the administrative appeals process, before bringing suit. *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (citation omitted). "To trigger the exhaustion requirement," however, the "agency must make and communicate its 'determination' whether to comply with a FOIA request—and communicate 'the reasons therefor'—within 20 working days of receiving the request, or within 30 working days in 'unusual circumstances.'" *Citizens for Responsibility and Ethics in Washington v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013)

(citation omitted). Here, it is undisputed that the FBI responded to King's request within twenty working days, and that it ultimately produced only six pages of documents in whole or in part to King. Dkt. 26-4 at 3–5 (Hardy Decl. ¶¶ 6, 8, 11). King was thus obliged to appeal the FBI's determination to the Office of Information Policy within the Department of Justice before bringing suit. He did not file any such appeal. Dkt. 26-4 at 21 (Hardly Decl. ¶ 46). The Court will, accordingly, grant the Department's motion for summary judgment as to the FBI for failure to exhaust administrative remedies.

**B. DEA**

King requested records reflecting "any and all extrajudicial statements made by a DEA confidential informant" named in his request "to federal and local law enforcement agents including DOJ lawyers in reference to a suspect . . . identified as 'Johnny' LNU." Dkt. 26-3 at 18. In subsequent correspondence, King clarified that "'Johnny' LNU[,] 'Sonny' LNU[,] 'Richard' LNU[,] and 'Richard King'" were "one and the same person." *Id.* at 34. The Court concludes that the DEA conducted an adequate search, properly withheld records pursuant to FOIA Exemption 7, and reasonably concluded that no segregable material could be released.

1. *Adequacy of the DEA's Search*

The DEA treated King's request as seeking "any and all documents that referenced" King, or his aliases "Johnny" and "Sonny." Dkt. 26-3 at 4 (Myrick Decl. ¶ 14). The undisputed record shows that the agency searched for responsive records "in two DEA Privacy Act systems of records" and that "[n]o other DEA records systems were reasonably likely to contain information responsive to [King's] request." *Id.* at 4 (Myrick Decl. ¶ 15). The agency "perform[ed] a subject and alias name query using Plaintiff's name: Richard King." *Id.* at 6 (Myrick Decl. ¶ 22). The DEA employed search methods reasonably expected to produce

responsive results, *see Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), and specifically identified which systems and terms it searched to identify records responsive to Plaintiff's requests, *see White v. U.S. Dep't of Justice*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012). The searches cumulatively located ninety-one pages responsive to Plaintiff's request. Dkt. 26-3 at 6 (Myrick Decl. ¶ 23). Because the agency searched all files likely to contain responsive records, the Court concludes that its search was adequate. *See Oglesby*, 920 F.2d at 68.

2. *Exemption 7(C)*

The DEA withheld all ninety-one pages of responsive materials under FOIA Exemption (7)(C) "because they contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with" King. *See* Dkt. 26-3 at 10 (Myrick Decl. ¶ 38). Those third parties included "suspects, criminal associates, Confidential Sources, and law enforcement officers and support personnel." *Id.* Where disclosure of information compiled for law enforcement purposes "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), such information can be withheld if the privacy interests outweigh the public interest in disclosure. *See Safecard Servs.*, 926 F.2d at 1205.

The DEA concluded that disclosure of the "names and other identifying information" in the responsive records could lead to the individuals becoming "targets of harassment and humiliation," Dkt. 26-3 at 11 (Myrick Decl. ¶¶ 41–42), which is a "legitimate interest" weighing against disclosure. *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980). Because King has not provided "compelling evidence that the agency is engaged in illegal activity," *see Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting *SafeCard Servs.*,

926 F.2d at 1206), and has not identified any other countervailing public interest that would be served by disclosure, the agency's invocation of Exemption 7(C) was proper.

3. *Exemption 7(D)*

The DEA withheld sixty pages pursuant to FOIA Exemption (7)(D). *See* Dkt. 26-3 at 11 (Myrick Decl. ¶ 43). To apply this exemption, an agency must show that the records at issue were compiled for law enforcement purposes and that their disclosure "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). A source is confidential for purposes of this exemption where "the source provided information under an express assurance of confidentiality." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quotation marks omitted). The DEA FOIA officer has attested that "[t]he investigation of Plaintiff involved Confidential Sources," that "the responsive investigative reports include source-related information," that "[s]ome of the information at issue pertains to a 'coded' Confidential Source with an express assurance of confidentiality," and that sixty pages of the responsive material "contain information that would disclose the identity of, and the information provided by, Confidential Sources." Dkt. 26-3 at 12 (Myrick Decl. ¶¶ 43–44). The DEA thus properly invoked Exemption (7)(D).

4. *Exemption 7(E)*

The DEA applied FOIA Exemption (7)(E) to eighty-three pages of responsive records that contained numbers and codes from the agency's internal records management systems. Dkt. 26-3 at 12 (Myrick Decl. ¶¶ 45–46). Exemption (7)(E) exempts information compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The undisputed record shows that the codes "reflect procedures prescribed by the DEA Agents Manual," which specifically instructs agents about how to use the codes to document criminal activity and identify criminals. Dkt. 26-3 at 12–13 (Myrick Decl. ¶ 46). The DEA's witness attests that, if such information were publicly disclosed, suspects could decipher the codes to "identify the priority given to narcotics investigations" and "change their pattern of drug trafficking." *Id.* at 13 (Myrick Decl. ¶ 47). Under Exemption (7)(E), the DEA may withhold records to prevent such circumvention. *See, e.g.*, *Shapiro v. U.S. Dep't of Justice*, --- F. Supp. 3d ---, 2017 WL 908179, at *11 (D.D.C. March 6, 2017).

5. *Exemption 7(F)*

The DEA applied Exemption (7)(F) to fifty-nine pages of responsive records that include the names and identifying features of DEA Special Agents and other DEA officers. *See* Dkt. 26-3 at 14 (Myrick Decl. ¶ 51). Exemption (7)(F) prevents disclosure of documents that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). An agency must identify and explain the reasonable threat of harm imposed on the individuals identified in the records the agency is seeking to exempt. *See Ctr. for National Security Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 948 (D.C. Cir. 2003). The DEA emphasizes that past release of Special Agents' identifying information has "resulted in several instances of physical attacks, threats, harassment, and attempted murder" of undercover agents interacting with criminals covertly. Dkt. 26-3 at 14 (Myrick Decl. ¶ 53). It further attests that other DEA officers and employees also perform "critical functions in support of [these] enforcement efforts," and that it therefore anticipates that the same reasonable threat of harm faced by Special Agents would also apply to these officers. *Id.* at 14–15 (Myrick Decl. ¶ 52–53). These facts are sufficient to support the DEA's invocation of Exemption 7(F).

6. *Segregability*

The DEA examined all responsive pages "to determine whether any reasonably segregable information could be released" and determined that "only blank pages, pages with only Plaintiff's name or identifying information, the investigative file number, and/or pages with incomprehensible words and phrases would remain." Dkt. 26-3 at 15–16 (Myrick Decl. ¶ 56).

The DEA properly withheld records under FOIA Exemptions 7(C), (D), (E), and (F), and properly concluded that no non-exempt material was reasonably segregable. The Court will, accordingly, grant the Department's motion as to the DEA.

**C. EOUSA**

King requested from the EOUSA all records relating to any agreement between the United States and a named confidential source, Dkt. 26-5 at 9, all information contained in a specific file relating to his criminal prosecution, *id.* at 12, and all records relating to communications involving several specified DOJ employees involved in his prosecution, *id.* at 19–20.

The agency located King's criminal case file, but withheld it on the basis that it was "sealed in its entirety." Dkt. 26-5 at 2 (Luczynski Decl. ¶ 7). Standing alone, however, that assertion does not answer the relevant question. As the D.C. Circuit explained in *Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 197 (D.C. Cir. 1991), "the proper test for determining whether an agency improperly withholds records under seal is whether the seal, like an injunction, *prohibits* the agency from disclosing the records." *Id.* "If it does, the FOIA does not compel the agency to release the information." *Id.* In applying this standard, the district court must do more than rely "on the mere existence of the seal;" it must "inquir[e] into its intended effect." *Id.* Because the EOUSA declarant has not indicated whether and how the seal precludes the Department from

disclosing any or all of the records at issue, the Court cannot grant summary judgment in the Department's favor on this ground.

The EOUSA declarant also discusses a number of FOIA Exemptions, suggesting that the relevant materials would be exempt from disclosure even in the absence of the seal. *See* Dkt. 26-5 at 5–7 (Luczynski Decl. ¶¶ 17–25). The Court cannot discern from the declaration, however, whether the Department has actually reviewed all of the responsive records or has, instead, merely hypothesized that they would likely be exempt. Accordingly, the Court lacks sufficient information to grant the Department's motion for summary judgment on this alternative basis.

The Court will, therefore, deny the Department's motion for summary judgment as to the EOUSA without prejudice and will allow it to file a renewed motion for summary judgment within 30 days of the date of this opinion providing additional information on the seal and/or any FOIA exemptions that may apply.

## CONCLUSION

The Department's motion for summary judgment, Dkt. 26, is hereby **GRANTED** in part and **DENIED** in part without prejudice. The Department may file a renewed motion for summary judgment as to the records withheld by the EOUSA within 30 days of the date of this opinion.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 28, 2017