# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD ALAN KING,

    *Plaintiff*,

    v.

U.S. DEPARTMENT OF JUSTICE,

    *Defendant*.

Civil Action No. 15-1445 (RDM)

## MEMORANDUM OPINION AND ORDER

Richard Alan King, proceeding *pro se*, brought this action under the Freedom of
Information Act ("FOIA"), 5 U.S.C. § 552, seeking records from four Department of Justice
("the Department") components: the Federal Bureau of Investigations, the Office of the Solicitor
General, the Drug Enforcement Agency, and the Executive Office for United States Attorneys
("EOUSA"). In a prior opinion, the Court granted summary judgment in favor of the
Department with respect to three of those components but concluded that the Department had not
carried its burden with respect to the records maintained by EOUSA. *See King v. U.S. Dep't of
Justice*, 245 F. Supp. 3d 153 (D.D.C. 2017) ("*King I*"). In support of its contention that EOUSA
satisfied its FOIA obligations, the Department had submitted a declaration attesting that EOUSA
located King's criminal case file but had withheld it because the file was "sealed in its entirety."
*Id.* at 163. The Court explained that the declaration was deficient for two reasons: First, the
declaration did not "indicate[] whether and how the seal preclude[d] the Department from
disclosing any or all of the records at issue." *Id.* Second, to the extent the Department
determined that "the relevant materials would be exempt from disclosure even in the absence of
the seal," the declaration did not indicate "whether the Department ha[d] actually reviewed all of

the responsive records or ha[d], instead, merely hypothesized that they would likely be exempt." *Id.*

The Department has now renewed its motion for summary judgment with respect to the EOUSA records. Dkt. 68. In doing so, the Department now states that it cannot "confirm" that the records are, in fact, sealed and that, accordingly, "it has proceeded to process the materials." Dkt. 68-1 at 2. EOUSA located 24 pages of responsive records and withheld all 24 pages as exempt under both FOIA and the Privacy Act.[1] Dkt. 68-2 at 2 (Def's SUMF ¶¶ 5–6). Because the Department has not provided sufficient detail regarding either its search or the nature of the documents withheld, the Court will **DENY** the Department's motion for summary judgment.

King sent three FOIA requests to EOUSA. The first, sent on November 10, 2014, requested "[a]ny and all information regarding any written, oral or tacit plea agreement or memorandum of understanding between the United States and" a confidential source, including "any and all information regarding a waiver of filing an enhancement," and "any recordings, jail recording, notes, letters, e-mails, summaries of phone conversations of DOJ supervisors and" Assistant United States Attorneys, identifying seven individuals by name. Dkt. 26-5 at 9–10. The second, sent that same day, requested "all information regarding File Title GFC5-08-9122 as

---

[1] Section (j) of the Privacy Act provides that "[t]he head of any agency may promulgate rules . . . to exempt any system of records within the agency from any part" of the Act if "[t]he system is maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws." 5 U.S.C. § 552a(j)(2). EOUSA argues, and King does not appear to contest, that all EOUSA criminal case files are exempt from the access provisions of the Privacy Act under 28 C.F.R. § 16.81, which exempts all criminal case files maintained by United States Attorney's Offices. Moreover, to the extent responsive records might be found in email accounts, those accounts do not constitute "system[s] of records" under the Privacy Act. *See House v. U.S. Dep't of Justice*, 197 F. Supp. 3d 192, 210 (D.D.C. 2016). The Court, accordingly, will only address the exemptions invoked under FOIA.

shown circled in the attached DEA-12 filed in U.S. v. King DC Doc Ent 824-5 June 25, 2012." *Id.* at 12. The EOUSA viewed the second request as "all inclusive, encompassing the subject matter of his first request," and assigned the combined requests the number 2015-618. Dkt. 26-5 at 2 (Luczynski Decl. ¶ 7). Finally, on November 27, 2014, King sent a third FOIA request, seeking "information related to the investigation and prosecution of Richard Alan King . . . involving case numbers 08-0029-M, 08-0077-M Eastern District of New[ Y]ork . . . and case number 2:08-cr-0045-PHX-SRB (District of Arizona)." *Id.* at 19. In particular, he sought (1) "e-mails, letters, notes, [or] summaries of phone conversations . . . stored in any form or place" and "all communications sent to or from" a long list of FBI Special Agents, Assistant United States Attorneys, and lawyers; (2) communications with "employees of the Ninth Circuit Court of Appeals; and (3) "any and all authorizations signed by the Attorney General . . . , his Deputy, or Designee giving or denying permission to any United States Attorney or [Assistant United States Attorney] to act in the above captioned cases." *Id.* at 19–20.

The Court has reviewed the Department's renewed motion for summary judgment, supporting declaration, and *Vaughn* index and concludes that the Department has failed to meet its burden on demonstrating that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To satisfy this burden, an agency must submit a declaration that "explain[s] in reasonable detail the scope and method of the search [it] conducted," *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) (citation and internal quotation marks omitted), in order to permit "a court to determine if the search was adequate," *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). "Summary judgment must be denied 'if a review of the record raises substantial doubt'"

regarding the adequacy of the search.  *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (citation omitted).

The Department did not discuss EOUSA's search in the supplemental declaration itsubmitted with its renewed motion for summary judgment.  *See* Dkt. 68-2 (Supp. Luczynski Decl.).  However, in its original declaration, submitted in support of the Department's first motion for summary judgment, EOUSA defended the adequacy of its search as follows:

> After receiving plaintiff's request letters, EOUSA undertook the search for documents responsive to plaintiff's FOIA requests.  Upon receiving a request, EOUSA forwarded the request letter to the FOIA Contact for the United States Attorney's Office for the appropriate district indicated by the requester.  Each United States Attorney's Office maintains the case files for matters prosecuted by that office.  The FOIA Contacts began a systematic search for records on each given subject and case number when provided, to determine the location of any and all files relating to his requests in order to comply with the FOIA request.  The FOIA Contacts searched for records physically and also sent emails to the appropriate staff to ascertain whether they had any responsive records.  In connection with the search for responsive records to Plaintiff's FOIA requests, the FOIA Contacts used the computer tracking system for the United States Attorney Offices, the "LIONS" system.  The "LIONS" system is the computer system used by United States Attorneys' offices to track cases and to retrieve files pertaining to cases and investigations.  By use of the "LIONS" system, the user can access databases which can be used to retrieve the information based on a defendant's name, the USAO number (United States' Attorney's Office internal administrative number), and the district court case number.

Dkt. 26-5 at 3–4 (Luczynski Decl. ¶ 14).

That description of the relevant searches is inadequate for several reasons.  First, and most broadly, the description offers little more than boilerplate that could be used in virtually any case in which a FOIA requester seeks records from one or more United States Attorneys' Offices.  The reader is left to infer which offices received the requests, and the declaration fails to identify who oversaw the search or which files, other than the LIONS system, were searched. Likewise, the declaration asserts that a "systematic" search was conducted "on each given

subject," but does not indicate what "subjects" those charged with responding believed were implicated.  In a similar vein, the declaration asserts that the "FOIA Contacts" forwarded the FOIA requests to "the appropriate staff to ascertain whether they had any responsive records," but leaves it for the FOIA requester and the Court to guess which particular staff members actually received the request.  And, perhaps most strikingly, the declaration never attests that "the appropriate staff" actually searched their files and email for responsive records.

Those omissions, standing alone, would provide a sufficient basis to deny the Department's renewed motion for summary judgment.  But, in addition, there is reason to question whether the Offices of the U.S. Attorneys for the Eastern District of New York and the District of Arizona actually conducted a thorough search for responsive records.  To take just one example, King's November 27, 2014 FOIA request sought all "e-mail" to or from an array of Assistant United States Attorneys.  Dkt. 26-5 at 19.  But the EOUSA declaration says nothing about searching any active or archived email systems, and, to date, EOUSA has identified only 8 pages of email communications, all of which it withheld as attorney work product.  Dkt. 68-7 at 4.  That may, in fact, be all that exists, but the Court is unable to reach that conclusion based on the Department's scant submission.

The Department's renewed motion for summary judgment, if anything, adds to the Court's questions—rather than answering them.  It merely asserts that "[a]ll documents responsive to Plaintiff's FOIA request [were] maintained in the . . . Criminal Case File System" for the U.S. Attorney's Office for the District of Arizona.  Dkt. 68-6 at 1 (Supp. Luczynski Decl. ¶ 2).  Again, although it is possible that the only records that exist that were sent to or received by the array of Assistant United States Attorneys, FBI Special Agents, and other lawyers identified in King's November 27, 2014 request are maintained in that system alone, just as it is

possible that only 24 pages of records exist, the Department needs to do more to convince the Court that it has conducted a thorough search. It must indicate "'which files were searched,' [and] by whom those files were searched, and" it must show that each of the U.S. Attorneys' Offices took a "systematic approach to document location." *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 144 (D.D.C. 2015) (quoting *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980)). Absent that information, the FOIA requester cannot be afforded an "opportunity to challenge the adequacy of the search," and the Court cannot "determine if the search was adequate." *Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 404 (D.C. Cir. 2017) (quoting *Oglesby*, 920 F.2d at 68).

The most recent declaration and *Vaughn* index provided to the Court are inadequate for a second reason as well—they do not provide sufficient information to evaluate the merits of EOUSA's withholdings. EOUSA initially posited that King's criminal case file was exempt from disclosure because it was "sealed in its entirety." *King I*, 245 F. Supp. 3d at 163. Unable to confirm that proposition, EOUSA now asserts that all of the records that it has located fall within one or more FOIA exemptions and, on that basis, it has withheld the records in full. After having reviewed the *Vaughn* index, however, the Court cannot assess whether that is correct. To take the clearest example, the *Vaughn* index identifies a document "titled 'Proffer Agreement' between the District Attorney and a third party individual," and it asserts that this record falls within Exemption (b)(5) because it is "attorney work product" and because it reflects "the deliberative process of the U.S. Department of Justice." Dkt. 68-7 at 6. It is unclear, however, whether the document was a final or draft "Proffer Agreement," whether it was ever filed or used in a judicial proceeding, and how, if at all, an agreement between a "third party" and "the District Attorney" reflects the "work product" or "deliberati[ons]" of Department of Justice lawyers.

6

Again, the Department's position may well be correct. But it is not explained with sufficient detail to allow for judicial review. *See SafeCard Servs., Inc. v. SEC.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (FOIA requires "relatively detailed and non-conclusory" declarations to demonstrate that agency has validly withheld records); *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (the government bears "the burden of justifying nondisclosure").

Because the Department's submissions lack sufficient detail to permit the Court to determine whether EOUSA's searches were adequate and whether it has lawfully withheld all of the records it has located to date, the Court must deny the Department's renewed motion for summary judgment.

## CONCLUSION

For the reasons explained above, the Department's motion for summary judgment, Dkt. 68, is hereby **DENIED**. Under the existing schedule, Plaintiff has not yet filed a reply brief in support of his cross-motion for summary judgment. The Court will enter a separate order setting a briefing schedule to allow the Department to renew its motion for summary judgment, with appropriate support, and allowing Plaintiff to file a combined reply and opposition brief.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 23, 2018